*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRIS MILIANIS,

Plaintiff-Appellant,

and

HENRY FORD HEALTH SYSTEM,

Intervening Plaintiff

UNPUBLISHED
June 27, 2019

v

JOHN DOE,

Defendant,

and

MAIN STREET AMERICA PROTECTION
INSURANCE COMPANY, NGM INSURANCE
COMPANY, and PROGRESSIVE MICHIGAN
INSURANCE COMPANY,

Defendants-Appellees

No. 342061
Macomb Circuit Court
LC No. 2016-002206-NI

Before: CAMERON, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

In this case involving benefits under the Michigan no-fault act, MCL 500.3101 *et seq.*, plaintiff[1] appeals as of right the trial court's order granting summary disposition in favor of defendants Progressive Michigan Insurance Company (Progressive), Main Street America Protection Insurance Company (Main Street), and NGM Insurance Company (NGM) under

---

[1] Plaintiff's first name appears as both "Chris" and "Christ" throughout the record. Plaintiff testified during his deposition that his legal name is "Christ."

MCR 2.116(C)(10). For the reasons set forth in this opinion, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of an automobile accident that occurred on June 24, 2015, in which plaintiff allegedly was injured after being rear-ended while he was driving his vehicle, a 2013 Hyundai Azera. The driver of the vehicle that hit plaintiff's Azera fled the scene of the accident.

Plaintiff and his brother, Pete Milianis, lived with their parents. Plaintiff was leasing the Azera, and the lease was "exclusively" in plaintiff's name. In addition to being the sole lessee of the Azera, plaintiff had registered the vehicle with the State of Michigan and was the sole registrant. Plaintiff also testified that he was the only person to use the Azera and that his family members were not allowed to use the vehicle. However, plaintiff further testified that he gave Pete "permission to use the car on a frequent basis because of the business that he had," which was a landscaping business called Pioneer Lawn and Home Maintenance (Pioneer).

Pete used the Azera for giving quotes to potential customers. He testified that the Azera had been used in his business "monthly" or "[p]eriodically" during a period of time beginning more than six months before the June 24, 2015 accident. However, the Azera was being repaired at some point preceding this accident and was unavailable for use during that time. According to Pete, Pioneer did not pay plaintiff for using the Azera, but Pioneer paid the insurance,[2] maintenance, and lease payments for the Azera. Pete explicitly testified that there was no contract between Pioneer and plaintiff regarding the Azera. There were no records showing that Pioneer paid the lease payments for the Azera. Pete testified that he never used the Azera for personal use. No records were kept to show when the Azera was used for Pioneer business. Pete also testified that neither he nor Pioneer had any ownership interest in the Azera. Additionally, Pete provided the following description of his use of the Azera:

> *Q.* How often would you use it? Would it be, and I understand you probably didn't write it down or anything like that, but was it weekly or monthly?

> *A.* You know, it was on a monthly. Periodically, like I said. Most of my quoting was throughout the business day with the truck and the equipment and everything else. It was very rarely that I was home during the daylight hours and the truck was parked. It was only then that, you know, I would grab the Azera, or me and my father together would go to do a quote.

---

[2] Pete testified that Pioneer began paying the insurance premiums for the Azera after it was added to Pioneer's policy with NGM.

Pioneer had a commercial automobile insurance policy issued by NGM[3] that was in effect from September 17, 2014 to September 17, 2015. Pioneer was the only named insured. On March 30, 2015, plaintiff's Azera was added to Pioneer's NGM policy as a covered commercial automobile. Plaintiff was added as a driver to the NGM policy held by Pioneer on May 28, 2015. The record also reflects that plaintiff was both deleted and added to the policy as a driver on June 11, 2015.

Plaintiff's parents had an automobile insurance policy issued by Progressive that was in effect from May 19, 2015 to November 19, 2015. Plaintiff's parents were the only named insureds on this policy, and they were the only listed drivers and household residents. There is no reference to plaintiff or Pete in the policy. The policy covered three vehicles, and plaintiff's Azera was not one of those covered vehicles.

Plaintiff described his driving record prior to the June 24, 2015 accident as "[f]air," noting that he had been in a few accidents and had received a few tickets. Both plaintiff and Pete described Pete's driving record as "bad." Pete had not had a driver's license since 2013. Pete did not own any motor vehicles, and the other two vehicles on Pioneer's commercial automobile insurance policy with NGM were also apparently owned by plaintiff. Perhaps the most interesting circumstance regarding the convoluted nature of the insurance arrangements among plaintiff's family members is the fact that plaintiff is an insurance agent with his own insurance agency, named the Chris Milianis Insurance Agency, through which both of the policies at issue in this case were obtained.

Both NGM and Progressive denied the claims made under their respective policies, and plaintiff initiated this action. In his complaint, plaintiff raised a claim of negligence against the unknown driver who allegedly hit plaintiff's vehicle, claims for uninsured motorist and first-party benefits against Main Street and NGM, and a claim for first-party benefits against Progressive.

Progressive moved for summary disposition under both MCR 2.116(C)(8) and (10), arguing that plaintiff was not entitled to recover under either of the insurance policies at issue in this case. First, with respect to the NGM policy, Progressive argued that this policy was void with respect to the Azera because Pioneer did not have an insurable interest in this vehicle, which is necessary to support a valid policy for automobile liability insurance. Progressive contended that Pioneer was not the owner or registrant of the Azera and that Pioneer did not have any pecuniary interest in the vehicle since plaintiff's testimony showed that the Azera was only a personal vehicle with no business purpose. Second, Progressive argued that plaintiff was barred, both under MCL 500.3113(b) and the terms of the Progressive policy, from recovering personal

---

[3] It appears that NGM is affiliated with Main Street, but the nature of that affiliation is not clear from the record. For purposes of this opinion, we will refer to these two entities collectively as "NGM."

protection insurance (PIP) benefits because plaintiff was the only "owner" of the Azera and he failed to maintain no-fault insurance on the vehicle as required by MCL 500.3101(1).[4]

NGM filed a response to Progressive's motion for summary disposition in which NGM seemingly concurred in Progressive's motion, although NGM also advanced additional arguments of its own that are not relevant to the instant appeal.

In opposing the motion for summary disposition, plaintiff argued that Pioneer had an insurable interest in the Azera because its loss denied Pioneer the use of this vehicle in its business. As such, argued plaintiff, the Azera was actually insured at the time of the accident because the NGM policy was valid and covered this vehicle. Plaintiff further noted that the Azera was being used in Pioneer's business with plaintiff's permission and that plaintiff was listed on the policy as a driver. Plaintiff argued that it was not necessary for each owner or registrant of a vehicle to have a separate insurance policy on the vehicle. On the basis of the NGM policy, plaintiff contended that he had met his obligations under the no-fault act to insure the Azera.

In a written opinion and order, the trial court granted Progressive's motion for summary disposition, and NGM's "concurrence," under MCR 2.116(C)(10). The court noted that plaintiff and the Azera were not listed in the Progressive policy at all. The trial court also determined that plaintiff had failed to maintain no-fault insurance on the Azera through the NGM policy because Pioneer did not have an insurable interest in that vehicle and neither Pete nor Pioneer were constructive owners of the Azera. The trial court concluded:

> Thus, although the Azera was listed on the [NGM] policy, [NGM] properly determined that the policyholder lacked an insurable interest in the vehicle and therefore the policy was void as to that vehicle. Both PIP benefits and uninsured motorist benefits are unavailable to Plaintiff because the policy is void.
>
> The Azera is not listed on the Progressive policy issued to Plaintiff's parents. Plaintiff failed to maintain security on the Azera in accordance with MCL 500.3101 and thus he is barred from receiving PIP benefits under MCL 500.3113. [Opinion and Order, p 5.]

Finally, based on this ruling, the trial court concluded that Progressive's fraud argument was moot.

This appeal ensued.

## II. JURISDICTION

---

[4] Progressive also argued that the Progressive policy could be declared *void ab initio* because plaintiff committed fraud in procuring the policy by making material misrepresentations related to who resided at his parents' house and the vehicles kept there. As will be explained later in this opinion, it is unnecessary for us to address this issue at this juncture.

As an initial matter, Progressive challenges this Court's jurisdiction over this appeal. "Whether this Court has jurisdiction to hear an appeal is always within the scope of this Court's review." *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). We review this issue de novo. *Varran v Granneman*, 312 Mich App 591, 598; 880 NW2d 242 (2015). "The interpretation and application of a court rule is a question of law that this Court reviews de novo." *Id*.

Progressive argues that the opinion and order granting summary disposition was not a final order because it did not dispose of the claims of intervening plaintiff Henry Ford Health System (Henry Ford). Progressive claims that Henry Ford had already settled with defendants via mutual acceptance of case evaluation but that the trial court did not enter an order dismissing Henry Ford's claims. Consequently, argues Progressive, this Court lacks jurisdiction over this appeal.

As pertinent to the instant case, this Court has "jurisdiction of an appeal of right filed by an aggrieved party from . . . [a] final judgment or final order of the circuit court . . . as defined in MCR 7.202(6) . . . ." MCR 7.203(A)(1). In a civil case, "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties" constitutes a "final judgment" or "final order." MCR 7.202(6)(a)(i).

In this case, although Progressive claims that Henry Ford accepted the case evaluation award and settled this case, the record does not factually support this claim. The register of actions actually indicates simply that the case evaluation award was rejected. Moreover, Henry Ford's claims are simply derivative of plaintiff's claims. Henry Ford was seeking to recoup expenses it had allegedly incurred for providing medical treatment to plaintiff after the accident and that Henry Ford believed constituted benefits to which plaintiff was entitled under the no-fault act. Henry Ford alleged that it had received a valid assignment of benefits from plaintiff. Henry Ford also explicitly concurred in plaintiff's response to Progressive's motion for summary disposition. The trial court's order granting summary disposition in favor of defendants and dismissing plaintiff's claims also necessarily dismissed Henry Ford's claim. "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 204; 920 NW2d 148 (2018) (quotation marks and citation omitted). Furthermore, the trial court's order granting the summary disposition motion expressly states that it "resolves the last pending claim and closes this case." Under these circumstances, we conclude that the order granting summary disposition was a final order because it disposed of all claims and adjudicated the rights and liabilities of all the parties. MCR 7.202(6)(a)(i). This Court has jurisdiction over this appeal. MCR 7.203(A)(1).

III. SUMMARY DISPOSITION RULING

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "When reviewing a motion brought under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 253; 819 NW2d 68 (2012). Summary disposition may be granted under MCR 2.116(C)(10)

"when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. In deciding a motion under MCR 2.116(C)(10), "a court may not weigh the evidence before it or make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper." *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003) (quotation marks and citation omitted).

This Court reviews de novo, as questions of law, issues of statutory construction. *Corwin*, 296 Mich App at 253. "The interpretation and construction of insurance contracts are also questions of law, which this Court reviews de novo." *Id*. (quotation marks and citation omitted). The question of a vehicle's ownership for purposes of the no-fault act "is one of fact that is to be decided by the factfinder." *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 131-134; 489 NW2d 137 (1992) (concluding that the trial court did not err by denying the defendant insurance company's motion for a directed verdict and allowing the question of the subject vehicle's ownership to be decided by the jury because, "[v]iewing the evidence in the light most favorable to plaintiff, we find that there was a question of fact concerning ownership"). The issue whether an insured has an "insurable interest" sufficient to support a valid automobile liability insurance policy is a question of law that is reviewed de novo. *Morrison v Secura Ins*, 286 Mich App 569, 572; 781 NW2d 151 (2009).

Plaintiff argues on appeal that Pioneer was an "owner" of the Azera under the no-fault act and that Pioneer also had an "insurable interest" in the Azera. Consequently, there was valid insurance coverage on the Azera through the NGM policy, and plaintiff was not barred from recovering PIP benefits or uninsured motorist benefits.[5]

We turn first to the question whether Pioneer was an "owner" of the Azera as that term is defined in the no-fault act. "A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident . . . [t]he person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103[6] was not in effect." MCL 500.3113(b). Under MCL 500.3101(1), "[t]he owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." The term "owner" is defined in MCL 500.3101(2)(*l*), which provides in pertinent part as follows:

       (2) As used in this chapter:

---

[5] We note that "[u]ninsured motorist benefit clauses are construed without reference to the no-fault act because such insurance is not required under the act." *Twichel*, 469 Mich 524, 533; 676 NW2d 616, 621 (2004).

[6] MCL 500.3103 involves security requirements for motorcycles and is inapplicable to the instant case.

* * *

(*l*) "Owner" means any of the following:

(*i*) A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days.

* * *

(*iii*) A person that holds the legal title to a motor vehicle or motorcycle, other than a person engaged in the business of leasing motor vehicles or motorcycles that is the lessor of a motor vehicle or motorcycle under a lease that provides for the use of the motor vehicle or motorcycle by the lessee for a period that is greater than 30 days.

In this case, it is undisputed that plaintiff was an "owner" of the Azera as the sole lessee of the vehicle. MCL 500.3101(2)(*l*)(*i*). There is no indication that plaintiff obtained an insurance policy in his own name covering the Azera. The Progressive policy held by plaintiff's parents does not list plaintiff or the Azera. There is also no claim that plaintiff was a named insured on the NGM policy held by Pioneer. "[M]erely listing a person as a designated driver on a no-fault policy does not make the person a 'named insured.' " *Cvengros v Farm Bureau Ins*, 216 Mich App 261, 264; 548 NW2d 698 (1996).[7]

Thus, the issue becomes whether Pioneer was *also* an owner such that the security requirement of MCL 500.3101(1) could potentially be satisfied with respect to this vehicle by an insurance policy that was issued to Pioneer. "There may be multiple owners of a vehicle for purposes of the no-fault act," *Iqbal v Bristol West Ins Group*, 278 Mich App 31, 38; 748 NW2d 574 (2008) (quotation marks and citation omitted), and the no-fault act does not require that *all* owners of a vehicle procure no-fault insurance for the vehicle, *id*. at 40 n 2. In the context of the relationship between MCL 500.3101(1) and MCL 500.3113(b), the pertinent inquiry is whether there is no-fault insurance coverage for the vehicle at issue, rather than whether a particular owner obtained coverage. *Id*. at 39-40. However, the requisite no-fault security must still be obtained by an *owner*, rather than a nonowner. *Barnes v Farmers Ins Exch*, 308 Mich App 1, 8-9; 862 NW2d 681 (2014) (holding that owners could not "avoid the consequences of MCL 500.3113(b) if no owner obtained the required insurance" and that "when none of the owners maintains the requisite coverage, no owner may recover PIP benefits").

In determining whether an individual is an owner under MCL 500.3101(2)(*l*)(*i*), "it is not necessary that a person *actually* have used the vehicle for a thirty-day period before a finding may be made that the person is the owner. Rather, the focus must be on the nature of the person's right to use the vehicle." *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 530; 676 NW2d

---

[7] We note that it is not clear from the record whether plaintiff was actually a listed driver on the NGM policy at the time of the accident. There exists a genuine question of fact on this point. *West*, 469 Mich at 183.

616 (2004).[8]  In *Ardt v Titan Ins Co*, 233 Mich App 685, 690-691; 593 NW2d 215 (1999), this Court held

> that "having the use" of a motor vehicle for purposes of defining "owner," MCL 500.3101(2)(g)(*i*),[9] means using the vehicle in ways that comport with concepts of ownership.  The provision does not equate ownership with any and all uses for thirty days, but rather equates ownership with "having the use" of a vehicle for that period.  Further, we observe that the phrase "having the use thereof" appears in tandem with references to renting or leasing.  These indications imply that ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another.

In this case, the nature of the use of the Azera in the course of Pioneer's business is somewhat unclear.  There was evidence that Pete used the Azera for giving quotes to potential customers.  The evidence also seems to reflect both that plaintiff gave defendant permission to use the Azera, and that the vehicle was added to Pioneer's NGM policy, at some point after plaintiff had been instructed to limit his driving following a heart attack and was not using the vehicle much.  According to Pete's deposition testimony, the Azera had been used in Pioneer's business "monthly" or "[p]eriodically" during an approximately six-month period before the June 24, 2015 accident, although it had not been used in the business for approximately one month preceding the subject accident because the vehicle was being repaired.  Pete testified that Pioneer paid the insurance premiums for the Azera after it was added to Pioneer's NGM policy, and he further stated that Pioneer also paid the maintenance and lease payments for the Azera.  Taking responsibility for the combination of insurance premiums, maintenance expenses, and lease payments is consistent with possessory usage that "comport[s] with concepts of ownership" or "having the use" of the Azera under MCL 500.3101(2)(*l*)(*i*).  *Ardt*, 233 Mich App at 690-691.  Furthermore, the fact that the Azera was in the shop for repairs during the time period leading up to the subject accident is irrelevant because that only affected the *ability* of Pioneer to use the vehicle but not any *right* Pioneer may have had to use the vehicle.  See *Twichel*, 469 Mich at 530.  An individual does not cease being an owner of a vehicle while it is being repaired.

On the other hand, plaintiff testified that he was leasing the Azera, that the lease was "exclusively" in his name, and that the registration was solely in his name.  According to plaintiff, he was the only person to use the Azera; nobody, including his family members, was allowed to drive his vehicle.  Plaintiff also testified, however, that he frequently gave Pete "permission" to use the Azera during the course of Pete's work with Pioneer.  There was testimony that Pioneer did not pay plaintiff for its business use of the Azera and that there was no contract between Pioneer and plaintiff regarding the Azera.  Pete testified that neither he nor Pioneer had any ownership interest in the Azera.  Pete further testified that he generally used the

---

[8] *Twichel* involved an earlier version of MCL 500.3101, but the statutory definition of "owner" at issue is materially identical in the current version.

[9] *Ardt* also involved an earlier version of MCL 500.3101 with materially identical language regarding the definition of "owner" that is at issue in this case.

trucks for most of his quoting during the business day and that he only "rarely" used the Azera in situations where he was home and the truck was parked. Such facts appear to reflect "merely incidental usage under the direction or with the permission of another," rather than ownership of the vehicle for purposes MCL 500.3101(2)(*l*)(*i*). *Ardt*, 233 Mich App at 691.

In light of the above facts, reasonable minds could differ about the nature of how the Azera was used in the business of Pioneer and whether this use made Pioneer an "owner" for purposes of MCL 500.3101(2)(*l*)(*i*), which makes it apparent that there exists a question of fact on this issue that should be left to the trier of fact. *West*, 469 Mich at 183. Therefore, the trial court erred by essentially weighing the strength of the evidence and determining on summary disposition that Pioneer was not an "owner" under the no-fault act. *Lysogorski*, 256 Mich App at 299; *Botsford Gen Hosp*, 195 Mich App at 131-134.

The next question is whether Pioneer lacked an "insurable interest" in the Azera such that the NGM policy purporting to cover the vehicle could nonetheless be deemed void with respect to this vehicle.

"[U]nder Michigan law, an insured must have an 'insurable interest' to support the existence of a valid automobile liability insurance policy." *Morrison*, 286 Mich App at 572 (quotation marks and citation omitted; alteration in original). "[T]he insurable interest must be that of a 'named insured.' " *Id*. (citation and some quotation marks omitted). "A policy is void when there is not an insurable interest." *Corwin*, 296 Mich App at 258.

This Court has explained that

the "insurable interest" requirement arises out of long-standing public policy. Specifically, it arises out of the venerable public policy against "wager policies"; which . . . are insurance policies in which the insured has no interest, and they are held to be void because such policies present insureds with unacceptable temptation to commit wrongful acts to obtain payment. Thus, "fundamental principles of insurance" require the insured to "have an insurable interest before he can insure: a policy issued when there is no such interest is void, and it is immaterial that it is taken in good faith and with full knowledge." However, an "insurable interest" need not be in the nature of ownership, but rather can be any kind of benefit from the thing so insured or any kind of loss that would be suffered by its damage or destruction. [*Morrison*, 286 Mich App at 572-573 (citations omitted).]

"An individual can have an insurable interest in a motor vehicle without having title to the vehicle." *Corwin*, 296 Mich App at 258. "Owners and registrants have an insurable interest in their motor vehicles because the no-fault act requires owners and registrants to carry no-fault insurance and MCL 500.3102(2) makes it a misdemeanor to fail to do so. The insurable interest of owners and registrants is, therefore, contingent upon 'personal pecuniary damage created by the no-fault statute itself.' " *Corwin*, 296 Mich App at 258 (citations omitted). And, as explained above, having title to a vehicle is not a necessary perquisite to being considered an "owner" for purposes of the no-fault act who is subject to the security requirements in MCL 500.3101(1). See MCL 500.3101(1) and (2)(*l*)(*i*); *Twichel*, 469 Mich at 531 ("The statute merely

-9-

contemplates a situation in which the person *is renting or using* a vehicle for a period that is greater than thirty days.").

In this case, there was testimony that the Azera was used to provide quotes to potential Pioneer customers and that Pioneer paid the insurance premiums, maintenance expenses, and lease payments for the Azera. This evidence, if believed, tends to demonstrate that the Azera was treated as part of Pioneer's fleet of vehicles. From this standpoint, Pioneer would have gained a benefit from the use of the Azera, and would have incurred a loss if it were damaged or destroyed, just as any business would with a vehicle in its fleet. In other words, this evidence shows that Pioneer expended resources to obtain the use of the Azera for specific business tasks and that the loss of the vehicle would necessitate its replacement, either by a new vehicle or by another vehicle in the fleet which would in turn be unavailable for other tasks. Accordingly, there was evidence to support the conclusion that Pioneer had an "insurable interest" in the Azera in the form of "any kind of benefit" or "any kind of loss that would be suffered by its damage or destruction." *Morrison*, 286 Mich App at 573.

In contrast, there was also evidence that the Azera was "rarely" used in Pioneer's business, that plaintiff was the only person to use the Azera, and that there was no contract between plaintiff and Pioneer regarding use of the Azera. Such evidence suggests that Pete merely borrowed the Azera on an infrequent, random basis to perform quotes without any real need or benefit gained. This evidence also tends to suggest that no loss was suffered by Pioneer when the Azera was damaged or destroyed. From this standpoint, Pioneer did not have an insurable interest in the Azera. *Id*. at 572-573.

Moreover, as previously discussed, there are material questions of fact regarding whether Pioneer could be considered an "owner" of the Azera for no-fault purposes. If it were determined that Pioneer was an owner, then it would have had an insurable interest in the Azera based on the concurrent statutory obligation to carry no-fault insurance. *Corwin*, 296 Mich App at 258. However, if Pioneer was not actually an owner or registrant of the Azera, then it would not have this type of an insurable interest. *Id*.

Viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ regarding the nature of Pioneer's use of the Azera, such that genuine issues of material fact exist and summary disposition was improper. *West*, 469 Mich at 183. The question whether there was an insurable interest is generally an issue of law. *Morrison*, 286 Mich App at 572. However, if there are unresolved material factual questions regarding the underlying circumstances on which the determination of the legal question relies, then it is proper to reserve those issues to the trier of fact. Cf. *Farwell v Keaton*, 396 Mich 281, 286-287; 240 NW2d 217 (1976) (stating that "[t]he existence of a duty is ordinarily a question of law" but that when there are disputed issues of fact regarding the factual circumstances giving rise to the duty, "they must be submitted to the jury, our traditional finders of fact, for ultimate resolution") (quotation marks and citation omitted); *Laier v Kitchen*, 266 Mich App 482, 495-496; 702 NW2d 199 (2005) (opinion by NEFF, J.) (explaining that the existence of a duty in the negligence context is usually a question of law for the court but that "if factual questions exist regarding what characteristics giving rise to a duty are present, the issue must be submitted to the fact-finder"). The trial court in the instant case erred by resolving these factual disputes and ruling that there was no insurable interest as a matter of law. *Lysorgski*, 256 Mich App at 299.

Because there were genuine issues of material fact regarding whether Pioneer's status as an owner or holder of an insurable interest with respect to the Azera, the trial court erred by granting summary disposition.

With respect to Progressive's argument that summary disposition in its favor was also warranted on the ground of fraud, the trial court ruled that this argument was moot based on its determination that summary disposition was proper due to Pioneer not being an owner and lacking an insurable interest. However, on remand this argument will no longer be moot in light of the trial court's errors in its ruling. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief."). Even if this Court were to address this issue now, it would not fully resolve this case because Progressive's fraud argument does not impact the NGM policy, which is the policy that purports to cover the Azera. The trial court should be given the opportunity to address Progressive's fraud argument in the first instance on remand along with any other theories that the parties may pursue. See *Shah*, 324 Mich App at 210.

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Jane E. Markey
/s/ Stephen L. Borrello